**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MICHAEL A.,                                                      Case No: 1:22-cv-550

               Plaintiff,

    v.                                                          Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

**MEMORANDUM OPINION AND ORDER**

In September 2022, Plaintiff filed a judicial appeal of the Commissioner's decision to deny Plaintiff benefits under the Social Security Act.  In July 2023, the Court reversed the Commissioner's non-disability determination and remanded for further development of the record. (Doc. 13.) Following remand, Plaintiff was awarded past-due disability insurance benefits. Currently pending before the Court is Plaintiff's counsel's motion for an award of attorney fees based on a pre-existing contingency fee agreement. (Doc. 17.) For the reasons stated, the motion is GRANTED.

**I.     Background**

Plaintiff's prevailing party status in obtaining a judgment of remand entitled him to recover attorney fees under the Equal Access to Justice Act ("EAJA"). On October 20, 2023, the Court granted the parties' joint motion for a stipulated EAJA award of $ 4,600. (*See* Doc. 16.) Separate and apart from her recovery of fees for work performed in this Court, counsel also was awarded $ 7,080.00 by the Social Security Administration for work that she performed at the administrative level.

On May 1, 2025, the Social Security agency sent Plaintiff and her counsel a Notice of Award reflecting an award of past-due Disability Insurance Benefits ("DIB") in the amount of $ 135,508.00. (Doc. 17-4.) On June 13, 2025, Plaintiff's counsel timely filed a motion that seeks an additional attorney's fee award,[1] consistent with the contingent fee agreement that Plaintiff signed on August 8, 2022 before counsel filed this federal case. (Doc. 17; *see also* Doc. 17-3.)

**II.    Analysis**

**A.  The Statutory Basis for a Fee Award**

Unlike an EAJA fee which is paid directly by the United States, an attorney's fee awarded under the Social Security Act has a direct impact on the disabled claimant, because it is paid from the benefits award. For that reason, 42 U.S.C. § 406(d) limits such fee awards to 25% of any past-due benefits award.[2] In the case presented, 25% of the total past-due benefits award equals $ 33,877.00. (Doc. 17-4, PageID 1650.) So that sum is the maximum award that Plaintiff's counsel may seek for her work under the Social Security statute. In his fee agreement, Plaintiff agreed to pay a "contingent fee of 25% of the past-due benefits awarded…." (Doc. 17-3.)

Counsel's motion does not seek the full amount to which her client contractually agreed, but instead seeks a contingent fee award of $ 20,000.00 for the 26 hours spent prosecuting this judicial appeal. Counsel's motion states that she will refund the earlier

---

[1] *See* Local Rule 54.2(b) (requiring motions for attorney's fees filed under the Social Security Act to be filed within 45 days "after entry of judgment or the date shown on the face of the social security certificate award (notice of award), whichever is later."

[2] The Social Security Agency ordinarily withholds 25% of any past-due benefits award for payment of attorney's fees. Although separate fees may be awarded by the agency for work performed at the administrative level, only a court may award fees for work performed in federal court.

EAJA fee award of $ 4,600.00 as legally required by the EAJA savings provision in order to avoid a duplicate recovery.[3] (Doc.17, PageID 1641.)

As is typical for requests that do not financially impact the United States, the Commissioner's response to Plaintiff's motion states that it neither supports nor opposes the § 406(b) motion. (Doc. 18.) The response further acknowledges that the fee request remains subject to additional judicial review under *Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S. Ct. 1817 (2002) and related Sixth Circuit authority to determine the "reasonableness" of any award. Under that authority, a contingency fee may be reduced if the fee requested would constitute a windfall. *Gisbrecht,* 535 U.S. at 808, citing *Rodriguez v. Sec'y of HHS*, 865 F.2d 739, 746-747 (6th Cir. 1989) (en banc).

Published case law from this district explains that an attorney seeking fees under §406(b) "must show, and the Court must affirmatively find, that a contingency fee sought, even one within the 25% cap, is reasonable for the services rendered." *Lowery v. Comm'r of Soc. Sec.*, 940 F. Supp.2d 689, 691 (S.D. Ohio 2013) (citing *Gisbrecht*, 535 U.S. at 807). In *Ringel v. Comm'r*, 295 F. Supp.3d 816 (S.D. Ohio 2018), the Court identified five key "guideposts" used to determine whether a contingent fee request should be approved as reasonable, or whether, conversely, it constitutes a windfall. The relevant guideposts are: (1) whether the hourly rate passes the test established in *Hayes v. Sec'y of HHS*, 923 F.2d 418 (6th Cir. 1990); (2) whether the fee has grown inordinately large due to delays in proceedings; (3) the quality and quantity of hours for which compensation is

---

[3]The savings provision in the EAJA works in tandem with contingency fee awards made under the Social Security Act to prohibit duplicate fee awards for "the same work." *See* PL 99-80 (HR 2378), PL 99-80, August 5, 1985, 99 Stat 183.

sought; (4) whether counsel has compromised the fee; and (5) whether the Commissioner opposes the award or other unique circumstances apply. *Id*.

### A.  Evaluation of the *Hayes* Test

The application of the *Hayes* test is always the first step in assessing the reasonableness of a fee, and sometimes the last. In *Hayes v. Sec'y of HHS*, 923 F.2d 418, the Sixth Circuit established that "a hypothetical hourly rate that is less than twice the standard rate is *per se* reasonable." *Id*., 923 F.2d at 422. In other words, if a contingency fee is authorized by a fee contract that does not exceed the statutory maximum fee of 25%, and if the total fee further falls below the twice-the-standard-rate *Hayes* "floor," then the reviewing court has fully satisfied its duty to ensure the fee is not a windfall. A hypothetical hourly rate that is more than twice counsel's standard rate still may be "reasonable," but requires additional judicial review. *Id*.

To calculate whether the requested fee falls below the *Hayes* floor, the total contingency fee sought by counsel is divided by the total number of hours spent in this judicial appeal. As applied here, the equation yields a hypothetical hourly rate of $ 769.24. Plaintiff's counsel represents that her standard hourly rate is $ 185.00 in social security appeals. In other words, when the *Hayes* formula is applied, it yields a hypothetical hourly rate that is slightly more than four times counsel's standard hourly rate.  A multiplier of four is not necessarily a windfall, but does require review of the additional guideposts set out in *Ringel*.

> Courts must be willing to approve multipliers above the *Hayes* "floor" when appropriate. At the same time, *Hayes* suggests that the higher the multiplier/rate, the more closely an award should be reviewed for windfall.

*Ringel*, 295 F.Supp.3d at 833.

4

**B. Analysis of Additional Factors Under *Ringel***

In cases in which a fee is not "*per se* reasonable" under *Hayes*, courts next consider whether the size of the total fee award has grown inordinately large due to the passage of time. And Plaintiff readily concedes that a reduction that is authorized "if the attorney delayed the case in federal court." (Doc. 17, PageID 1640). But reductions of fee awards are also necessary when delays occur through no fault of counsel.[4]

"For a variety of reasons, the wheels of justice turn slowly in social security cases." *Ringel*, 295 F.Supp.3d at 820. In *Ringel*, more than a dozen years had elapsed between the date that the plaintiff filed his initial application and the date that past-due benefits were awarded. More than three years' worth of the past-due benefits had accrued after this Court had recommended remand. The accumulation of benefits over such a long period of time was determinative in the court's conclusion that the fee award would constitute a windfall.

> Where the amount of elapsed time from onset of the disability to the Notice of Award is more than a decade…, there is a significant likelihood that the past-due benefits award will be "inordinately" large, and that the corresponding contingent fee will be "unearned" and unreasonable solely because of the length of time that benefits have accrued. The crux of the issue is whether the attorney or the disabled claimant should bear the greater risk for unusually long delay, whether at the administrative or judicial level. *Gisbrecht* and Sixth Circuit case law teach that the contingent fee should be reduced in such cases. !
> !

*Ringel*, 295 F.Supp.3d at 835 (footnote omitted).

---

[4]In this Court's experience, the reasons for delay rarely if ever are attributable to Plaintiff's counsel. And to be clear, the Court does not attribute any delay to counsel in this case.

In accord with published Sixth Circuit authority on the consideration of the passage of time in the windfall analysis, regardless of any role that counsel played in that delay, *Ringel* cited this reasoning:

> It seems perverse that an ultimately successful disabled claimant should be further punished by the delays of the administrative process…. By not taking into account this [excessive] administrative delay in evaluating a request for attorney fees, the claimants are punished twice. First, they do not receive their benefits in a timely manner. Second, their retroactive benefits are reduced by 25% for the full length of the administrative process. Thus, the only party ultimately benefitting from such a delay is the attorney.

*Id*., quoting *Thatch v. Comm'r of Soc. Sec.,* No. 1:09CV454, 2012 WL 2885432, at *6 (N.D. Ohio 2012).

In the spirit of the *Hayes* presumption, *Ringel* suggests a shorthand for evaluating the "passage of time" factor. Thus, "[a] contingent fee based on a past-due benefits award that reflects a period of less than four years is unlikely to constitute a windfall," while a similar fee "based on [an]… award that reflects a period longer than four years may well be approved as reasonable, but invites a closer look." *Id.*, 295 F. Supp.3d at 836. In the case at hand, Plaintiff became entitled to benefits in December 2019, but benefits were not awarded until May 2025. That 5.5 year time period is far less than the 12 years that supported reduction of the contingency fee award in *Ringel*, but requires some consideration. Considering the record, including that benefits continued to accrue for less than two years after remand, this factor weighs only slightly in favor of a windfall-related reduction.

The next *Ringel* factor is the quality and quantity of hours. "[T]he vast majority of social security cases reflect a very standardized number of attorney hours, typically between 10 and 40 hours, with most …falling near the midpoint of a 12–30 hour range."

*Ringel*, 295 F.Supp.3d at 836. Thus, the 26 hours that counsel logged in this case is fairly typical.[5] The issues presented in this appeal were neither novel nor complex – a challenge to the ALJ's evaluation of the medical opinion evidence, and a closely related challenge to the RFC determined by the ALJ that discounted Plaintiff's need to elevate his legs. Overall, the undersigned finds the quality and quantity of hours to be a neutral factor in the windfall analysis.

The next factor is whether Plaintiff's counsel has compromised her fee. Although Plaintiff agreed to pay his attorney a fee commensurate with the statutory maximum fee of $ 33,877.00, counsel has voluntarily reduced her fee in the pending § 406(b) motion. The compromise to which counsel has agreed is significant – nearly 41%.off the maximum fee she could claim under the statute and the fee contract. The amount of voluntary reduction allays any concern that counsel would receive a windfall and greatly favors an award of the full fee that she seeks.

Last, the undersigned considers whether the Commissioner opposes the award or whether any other circumstances apply. The Commissioner takes no position on the propriety of the fee that counsel seeks, and no other circumstances apply.

In sum, the most salient "windfall" factors in this case are the passage of time that contributed to a relatively large award and counsel's voluntary compromise of her fee. Because the passage of time only slightly favors a finding of windfall whereas counsel's

---

[5]*Ringel* explained that the number of hours alone is rarely determinative.

> An unusually high number may signal greater difficulty, but also could reflect the expenditure of "unnecessary hours" that do nothing but reduce the effective hourly rate below the *Hayes* floor. … In addition, experienced attorneys… may be able to complete a case in fewer hours within the typical range than would a newer attorney. In such cases, counsel should not pay a penalty for efficiency

*Id.*, 295 F.Supp.3d at 837 (internal citation omitted).

voluntary compromise greatly alleviates that concern, the undersigned recommends awarding counsel the full fee that she requests.

### III.     Conclusion and Order

Plaintiff's motion should be granted in full because the requested § 406(b) fee is less than the 25% statutory cap, is supported by the express language of the contingency fee agreement and other evidence, and is otherwise reasonable and not a windfall. However, for the convenience of the parties and of the Court, the duplicate EAJA fee previously awarded to counsel should be applied as an offset against the total award.[6] Accordingly, **IT IS ORDERED THAT** Plaintiff's motion for an award of attorney's fees (Doc. 17) be **GRANTED IN FULL**, with counsel to be awarded the additional <u>net</u> fee of **$15,400** ($ 20,000 less the $ 4,600 previously awarded under the EAJA) under 42 U.S.C. § 406(b).

<u>s/Stephanie K. Bowman</u>
Stephanie K. Bowman
United States Chief Magistrate Judge

---

[6]The prior EAJA award was paid by the Commissioner whereas a § 406(b) fee award is paid directly by Plaintiff. Applying an offset rather than requiring counsel to issue a refund serves judicial economy by avoiding the duplicate payment while preserving benefits awarded under the Social Security Act.

8